## In re PEERLESS FINISHING CO.

### (District Court, S. D. New York. June, 1912.)

BANKRUPTCY (§ 264*)—RECEIVERS—PLANT OF BANKRUPT—SALE.

 A bankrupt's plant, except accounts receivable and prepaid insurance, was appraised at $240,653. It had been run at a loss for some time because of lack of working capital, and could not be continued without a new investment of at least $100,000. The receiver obtained a bid of $181,000 therefor, and 90 per cent. in amount of the stockholders, and all but one-twelfth or less of the creditors either openly advocated or acquiesced in the sale. *Held*, that the offer should be accepted and the sale confirmed.

 [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 368, 369; Dec. Dig. § 264.*]

In Bankruptcy. In the matter of bankruptcy proceedings of the Peerless Finishing Company. Applications for a sale of assets and for dismissal of an involuntary petition. Petition for sale of assets granted, and petition for dismissal submitted for further consideration.

James N. Rosenberg, for receiver in bankruptcy.
Benjamin G. Paskus, for purchaser.
Richards & Heald (Henry Smith, of counsel), for consenting creditors.
Merritt Lane, for objecting creditors.
Joseph M. Hartfield, for alleged bankrupt.

HOUGH, District Judge. On June 7th two orders to show cause were granted herein, both returnable June 20, 1912. By the first order creditors and all parties interested were required to show cause why all the property of the alleged bankrupt should not be sold forthwith, and by the second order all creditors were required to show cause why (inter alia) an order of dismissal of these proceedings should not be made. At the place and time stat-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ed a large number of creditors appeared, due proof of service and advertisement was made, and the report of the appraisers appointed by this court submitted.

1. As to the order to show cause why the proceedings should not be . dismissed, two creditors (Saunders and Sherman), with claims aggregating $20,000 (unsecured), and represented by Mr. Lane, appeared and objected. No other objection was made, and no decision of that application is now made; but the submission thereof to the court without objection other than above noted is recorded.

A. One bid was made to the receiver for the property, in the amount of $181,000. The appraisers returned as the value of the alleged bankrupt's property the following:

| | |
|---|---:|
| Real estate and building | $149,400 |
| Machinery | 56,533 |
| Copper rolls | 34,720 |
| Accounts receivable | 500 |
| Prepaid and recoverable insurance | 2,000 |
| | $243,153 |

The bid is for all the above property, together with the good will, trade-name, etc., except the accounts receivable and prepaid insurance, making' the appraised value of the property bid for $240,653. It is obvious that the bid is as near as may be 75 per . cent. of the appraised value. No other bids having been received or offered in open court, numerous counsel and creditors personally addressed the court in favor of the sale; the result thereof being (tested by the bankrupt's books) that the total unsecured indebtedness of the corporation is $244,000, with $96,000 additional secured by mortgage, and $7,500 claiming the right of priority in payment.

I am satisfied that unsecured creditors, constituting a very large majority in number and representing slightly more than $197,600 in value, are in favor of sale at the price offered. The reasons why they should be and are in favor of such sale appear to be the following:

a. The mortgage indebtedness of the company is in default. It is represented by numerous mortgages, and if any one of five of the seven real estate mortgages owing were foreclosed it would disintegrate the property of the company. There is likewise a mortgage upon the copper rolls, which are absolutely necessary in the business of this concern, of $20,000. The appraised value is $34,720. The rolls cost the company about $53,000. The president of the company deposes that the appraised value is a very fair price for the rolls at the present time, and it is therefore obvious that this mortgage must be taken care of or the mill might as well be dismantled.

b. This company has been transacting a losing business for some time, and for more than two months last past, and considerably before bankruptcy proceedings were begun, efforts had been made by directors and creditors to either rehabilitate the company or sell

it out, and all efforts have failed, except in so far as this one bid represents success.

c. It is the expressed opinion of this large majority of creditors that, in order to procure anything substantial for the unsecured creditors, the sale must be of the whole plant, for its separation and partial sale is impracticable without loss.

d. The last reason is further thought a good one, because the business of the company is peculiar, the fittings of the mill are designed for that business, and the market for machinery of this class is limited.

e. While business is thought to have been bad, owing to conditions affecting the whole market for silks, nevertheless the business of this company has always been hampered by a lack of working capital. Between $400,000 and $500,000 have been put into the business, according to the company's books, yet the same has passed into bankruptcy without enough money on hand to meet a weekly pay roll, and with accounts receivable appraised at $500 only. No business can live on such terms as these, and I am convinced that Mr. Behrens (who addressed the court) is right in saying that it would be useless to start the business up again without $100,000 on hand. Mr. Behrens' firm is a stockholder to the extent of $5,-000, and a creditor, according to the company's, books, of $12,450.-64. It seems to me that his opinion should carry great weight, and I think it evidently did with the body of creditors present.

The opposition to this sale comes principally from Mr. Saunders, who is a stockholder to the extent of $10,000, and who urges that more time should be afforded to seek out a purchaser, or sell—insisting that a sale at the price offered can be made at any time. It is, however, admitted that for at least two months every effort has been made, both by creditors and directors, to dispose of this property or get money wherewith to start it again. Such efforts have failed, and all the officers of the company except Mr. Saunders have given up hope, and through counsel signified in open court their acquiescence in the sale proposed. Every shareholder has been notified of this application, and none appears to object except Mr. Saunders.

Under circumstances such as these a sale is lawful, if with the consent of the alleged bankrupt. It is, indeed, but a form of composition. The duty of the court is to ascertain what is for the benefit of the estate, and in my judgment that means whatever is for the benefit of the creditors. If there was serious opposition, the application should be denied.

If the company itself asked time for further efforts at rehabilitation, the same result should follow; but I am unable to see that there is any opposition to this sale, except that flowing from two gentlemen, who can do nothing themselves, or at least have accomplished nothing themselves for upwards of two months, and who are of the opinion that, if more time passes and more expense is incurred, somebody else will do what is needed. But who are the persons who will accomplish anything? Obviously only shareholders and creditors, and they prefer to acquiesce in this sale.

The public has been given far greater information about this matter than is required by bankruptcy procedure. A full hearing has been had at a largely attended meeting, and when of the stockholders but one-tenth in amount objects, and of the creditors all but one-twelfth or less in value either openly advocate the sale or by silence acquiesce therein, I think the duty of the court is plain.

An order will pass directing sale as prayed for.